**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:20-CR-28** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JORGE MALDONADO** | : | |

## MEMORANDUM AND ORDER

### I.    Introduction

Jorge Maldonado is a thrice convicted drug trafficker who is awaiting trial on his fourth drug trafficking indictment. The current allegations lodged against Maldonado are particularly troubling. The grand jury has found that Maldonado participated in a poly-substance drug trafficking conspiracy involving heroin, fentanyl and cocaine. Maldonado faces enhanced penalties in this case based both upon the drug quantities alleged in the indictment and based upon his past criminal conduct. Maldonado is then charged with multiple acts of drug distribution, and possession of firearms, a gun that he allegedly delivered to a police informant.

In consideration of this criminal recidivism, and the disturbing nature of the pending charges, we ordered Maldonado detained pending trial. We entered this order despite the proffered third-party custodian identified by Maldonado, his step-daughter, finding that her familial ties and the challenges she faced given the criminal charges pending against her step-father and spouse, made inappropriate as

a third-party custodian.

Maldonado now asks to reconsider this decision and release him on conditions that we previously deemed to be inadequate to ensure the safety of the community. This case comes before us for consideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress,

and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED without prejudice.

## II.     **Factual Background and Procedural History**

On February 5, 2020, the defendant was charged with conspiracy to distribute and possess with intent to distribute heroin, fentanyl, and cocaine hydrochloride; distribution of heroin and cocaine hydrochloride; and being a felon in possession of a firearm in violation of 21 U.S.C. §§ 841(a)(1), 846; and 18 U.S.C. § 922(g). These charges involved poly-substance drug distribution involving heroin, cocaine and fentanyl, and entails trafficking both in drugs and firearms by Maldonado, who had previously been convicted of drug trafficking on three prior occasions. Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings and a detention hearing were then conducted in this case on February 6, 2020 and February 11, 2020, respectively.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: The defendant was born in Puerto Rico in 1961 and lived

in Connecticut and New Jersey before moving to Harrisburg, Pennsylvania in 2016. He has been married since 2013 and has a total of seven children, one of whom he had with his wife. With respect to his health, the defendant reports that he has two stents in his heart and takes five different medications relating to high blood pressure and coronary artery disease. The defendant also reported having substance abuse problems dating back to age 15 and had consumed cocaine as recently as 12 hours prior to the preparation of the pre-trial services report. He had participated in drug treatment programs while incarcerated in Connecticut and New Jersey, but denied having sought treatment outside of prison. This lengthy and involved history of substance abuse apparently lead to an equally lengthy and robust criminal record, including drug charges dating back to 1985 that are reminiscent of the present pending charges in this case. Thus, it appears as though this is the defendant's fourth encounter with drug-related charges. The pre-trial services report also recommended the defendant's detention based upon a careful evaluation of the following individual characteristics of the defendant: his criminal history, self-reported active drug use, uncertain residence history, and the nature of the alleged instant offenses.

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as

required, including his proffered third-party custodian. On this score, we specifically found that the following factors supported the pre-trial detention of the defendant: the strength of the weight of the evidence against the defendant, the lengthy period of incarceration the defendant would face if convicted, the defendant's prior criminal history, his history of violence or use of weapons, and his history of alcohol and substance abuse. We also concluded that the proffered third-party custodian identified by Maldonado, his step-daughter, was inappropriate based upon her relative youth, familial ties and the challenges she faced given the criminal charges pending against both her step-father and her spouse.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease.

In addition to this generalized concern, the defendant cites the following specific and individualized factors which heighten these medical concerns in the instant case: his age, high blood pressure, two stents in his heart, and coronary artery disease. The defendant claims that these factors place him at higher risk of

contracting COVID-19 and that any resulting illness, if he were to contract this novel virus, could be potentially life-threatening.

The Government, in turn, opposes this motion, arguing that the factors and concerns that caused this court to order the defendant's detention in the past remain impediments to the defendant's release. In addition, the government points out that there have been no reported cases of COVID-19 in Dauphin County Prison ("DCP"), the location of the defendant's detention, and that DCP has taken numerous precautions to identify inmates and staff who are exhibiting symptoms of the virus and is prepared to quarantine, segregate, and treat anyone who does contract it.[1] Simply stated, the government argues that the defendant has not overcome the presumption in favor of his detention.

We agree.

---

[1] Specifically, the government asserts that DCP is currently on full quarantine status and closed to the public, keeping inmates in their housing units except for medical emergencies, and only allowing inmates out of their housing units in groups of ten or less. This is so inmates from different housing units will not come into contact with each other. In addition, the entire facility is being cleaned at least three times per day and inmates are being educated on proper hygiene with the cleaning supplies available to them. Staff are prohibited from reporting to work if they are ill, they are screened before arriving to work, and all staff have access to N95 masks if needed; staff at the booking center and staff and inmates who have left the prison for transport are likewise mandated to wear a mask. No inmates or staff have yet to test positive for the novel virus. In sum, DCP is complying with the latest CDC guidelines for prisons and their efforts have been successful to date.

## III.    Discussion

### A. Temporary Release Under 18 U.S.C. § 3142

While cast as a motion seeking temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq*., Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).

> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would

constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is

suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No.

19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of

temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." <u>United States of America v. Cox</u>, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."
> § 3142(i)

<u>United States v. Clark</u>, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.[2]

---

[2] We note that the specific statutory context of § 3142(i), which controls here, and our prior findings that the defendant's release would present a danger to the community thoroughly distinguish this case from <u>Thakker v. Doll</u>, 1:20-CV-840, an immigration detention case relied upon by the defendant in his motion. Simply put, this case involves an entirely different statutory framework, and the compelling public safety considerations inspired by our finding that this defendant presented a danger to the community were completely absent in <u>Thakker</u>.

## B. <u>The Defendant's Motion for Temporary Release Will Be Denied.</u>

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." <u>United States v. Roeder</u>, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." <u>United States v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case,

beyond a genuine, but generalized, concern regarding the risks created by COVID-19, the defendant alleges that he suffers from high blood pressure, two stents in his heart, and coronary artery disease. The defendant claims that these factors, combined with his advanced age place him at higher risk of contracting COVID-19 and that any resulting illness, if he were to contract this novel virus, would be potentially life-threatening. Thus, Maldonado provides some evidence of "particular vulnerability to the disease," proof which may "constitute a compelling reason for release under § 3142(i)." United States of America v. Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

Yet while proof of these medical conditions may be necessary to state a claim under § 3142(i), this diagnosis, standing alone, is not sufficient to automatically compel a defendant's release. Instead, we must then weigh those specific health concerns against the substantial public safety considerations which led us to order the defendant's detention in the first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: the strength of the weight of the evidence against the defendant, the lengthy period of incarceration the defendant would face if convicted, the defendant's prior criminal history, his history of violence or use of weapons, and his history of alcohol and substance abuse.

In our view, these public safety factors grounded in Maldonado current charges and his criminal history spanning decades outweigh the defendant's current health concerns. Indeed, other courts who have had the occasion to make such determinations have found that high blood pressure is insufficient to justify pre-trial release despite the admittedly increased risk that these defendants face in light of COVID-19. See United States v. Kahn, 2020 U.S. Dist. LEXIS 59411 (S.D. Fla. Apr. 2, 2020) (denying pretrial release for defendant who had suffered a heart attack and high blood pressure while incarcerated); United States v. Martin, 2020 U.S. Dist. LEXIS 46046 (D. Md. Mar. 17, 2020) (denying pretrial release for defendant suffering from diabetes, asthma, high blood pressure, and pain).

In addition, we note that DCP has yet to see any confirmed cases among its staff or inmate population and that it has several measures in place which comply with the latest CDC guidance to prevent and contain an outbreak, should one occur. Further, we note that the defendant's proffered third-party custodian has already been deemed insufficient by this court to assure the defendant's compliance with conditions of release or with the law.[3] This, in combination with the defendant's

---

[3] During a hearing on this motion on April 13, 2020, it was brought to the court's attention that this third-party custodian had moved since the first pre-trial release hearing, and that this new address where the defendant would reside, and the several blocks around it, were the locations of several controlled drug buys which lead to the instant charges against the defendant. Thus, it appears that if we were to grant pre-trial release to this third-party custodian, we would be releasing the defendant to the scene of his alleged crime, something we cannot do.

relatively well-managed health conditions and the proactive measures in place at DCP cause us to find that the defendant has not overcome the presumption in favor of his detention.

## IV. <u>Conclusion</u>

Based upon these findings, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. <u>United States of America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.  An appropriate order follows.

So ordered this 14th day of April 2020.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:20-CR-28** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JORGE MALDONADO** | : | |

## <u>ORDER</u>

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. <u>United States of America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 14th day of April 2020.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
